IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PAVLA J. HUNTLEY, )
)
Plaintiff, )
)
v. ) 1:18CV389
)
ANDREW SAUL, )
Commissioner of Social Security,[1] )
)
Defendant. )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Pavla J. Huntley ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on June 4, 2015, alleging a disability onset date of

---

[1] Andrew Saul became Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

March 10, 2008 in both applications. (Tr. at 10, 196-206.)[2] Her applications were denied initially (Tr. at 52-79, 110-17) and upon reconsideration (Tr. at 80-109). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 142-43.) On March 13, 2017, Plaintiff, along with her attorney and an impartial vocational expert, attended the subsequent hearing. (Tr. at 10.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 18), and, on March 29, 2018, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II. <u>LEGAL STANDARD</u>

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993)

---

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

2

(quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since March 10, 2008, her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 12.) At step two, the ALJ further determined that Plaintiff suffered from a single severe impairment: bilateral knee rheumatoid arthritis. (Id.) The ALJ found at step three that this impairment did not meet or equal a disability listing. (Tr. at 14.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform medium work with further limitations. Specifically, the ALJ found that Plaintiff

---

"ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

5

can only frequently stoop, must avoid concentrated exposure to cold temperatures; and is limited to performing simple, routine, repetitive tasks.

(Tr. at 14-15.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could perform her past relevant work as a dietary aide. The ALJ therefore concluded that Plaintiff was not disabled under the Act. (Tr. at 17.)

Plaintiff now raises two challenges to the ALJ's assessment of her mental impairment. Specifically, she contends that the ALJ (1) "erred in failing to consider Plaintiff's intellectual deficits as a medically determinable severe impairment at step 2 of the sequential evaluation process" and (2) "erred in failing to evaluate Plaintiff's claim under [20 C.F.R., Part 404, Subpt. P, Appx. 1, §§ 12.05B and 12.11 (hereinafter "Listings 12.05B and 12.11")] at step 3...." (Pl.'s Br. [Doc. #11] at 4, 6.) After careful consideration of the record, the Court finds that neither of Plaintiff's contentions merit remand.

A. Step Two Severe Impairments

Plaintiff first contends that the ALJ should have included an intellectual impairment among Plaintiff's severe impairments at step two of the sequential analysis. At step two of the evaluation process, a plaintiff must establish a "severe impairment," that is, an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). A non-severe impairment is defined as one that "does not significantly limit [a plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521.[5] "Basic work activities" are defined as functions such as

---
[5] The regulations were reorganized effective March 27, 2017, after Plaintiff's hearing but before the ALJ issued his decision, and the definitions of non-severe impairment and basic work activities were moved from 20 C.F.R. § 404.1521 to § 404.1522. See 82 Fed. Reg. 5844 (Jan. 18, 2017).

6

walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, using judgment, responding appropriately to co-workers and supervisors, and dealing with changes in a routine work setting. Id.

However, "[a]s long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted); see also Blevins v. Colvin, No. 5:15-cv-14240, 2016 WL 6987169, at *9 (S.D. W. Va. Sept. 16, 2016) (collecting cases). Therefore, in considering the alleged error at step two in this case, the Court also considers the ALJ's explanation and discussion throughout the sequential analysis. In this case, at step two, the ALJ identified Plaintiff's bilateral knee rheumatoid arthritis as her only severe impairment. (Tr. at 12.) He also expressly determined that Plaintiff's "medically determinable mental impairment of intellectual disorder does not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and is therefore non-severe." (Tr. at 13.) However, in making that determination, the ALJ included an extensive analysis of Plaintiff's intellectual impairment and its effect on her ability to work. The ALJ first explained as follows:

> [Plaintiff] was first assessed with mild intellectual disorder by consultative examiner Rebecca J. Kincaid, MS, based on the results of a WAIS-IV indicating [a] full-scale IQ score of 62. There [is] no other documentation in the evidence of record indicating that [Plaintiff] had an intellectual disorder. Mental status examinations throughout the record show normal mood, affect and behavior, and full orientations. Further, while school shows special education placement, at that time she had a Slossen IQ score of 77 and 75 and a WISC IQ score of 73. There is also indication that [Plaintiff] took driver's education and earned

7

> her driver's permit while in school. Because there is no showing of an intellectual disorder outside of borderline intellectual functioning during her developmental years, she cannot now be diagnosed with intellectual disorder.
>
> Accordingly, Ms. Kincaid's opinion that [Plaintiff] has cognitive ability in the deficient range and physical problems both of which seemed to be obstacles in her having gainful employment is assigned little weight. The opinion was based on a one-time office visit with heavily subjective statements and limitations provided by [Plaintiff] only, is not fully consistent with the examination findings, is an overestimate of the severity of [Plaintiff's] functional limitations, and is not supported by the evidence or record as a whole.

(Tr. at 13) (internal citations omitted). In short, the ALJ found that medical evidence failed to support Plaintiff's claim of a severe intellectual impairment. Nevertheless, the ALJ went on to further evaluate the effect of Plaintiff's intellectual impairment with respect to the four broad areas of mental functioning:

> [Plaintiff] has the following degree of limitation in the broad areas of functioning: mild restriction in understanding, remembering, or applying information, mild difficulties in maintaining social functioning, no limitation interacting with others, no limitation in concentrating, persisting, or maintaining pace, and no limitation in adapting or managing oneself. During the consultative psychological examination with Ms. Kinkaid, [Plaintiff] reported that she lived alone and helped her daughter who had a 13-year old special needs son who was in a wheelchair. She prepared simple meals and performed household chores. In addition, she reported that she stopped working in 2007 due to her mother's illness as opposed to functional limitations caused by her own impairment. Similarly, [Plaintiff's] daughter reported in a third party function report that despite her physical impairments, [Plaintiff] was able to take care of personal needs independently, did not need reminders to take care of personal grooming or to take medication, prepared meals, performed household chores, could take public transportation and go out alone, shopped in stores, had hobbies, went to church regularly and spent time with family.

(Tr. at 14.) Having set out this analysis, the ALJ then noted that "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. at 14.) The ALJ then specifically formulated an RFC for medium work with a further limitation "to performing simple, routine, repetitive

8

tasks." (Tr. at 15). Finally, the ALJ then concluded that Plaintiff could return to her past relevant work as a dietary aide. In this regard, the ALJ noted that Plaintiff "testified that she last worked as a dietary aide where her job responsibilities included washing trays, fixing desserts and serving food, which is an unskilled job. She worked from 2005 to 2007 in this capacity and only stopped working 2007 to care for her ill mother." (Tr. at 17.) Likewise, in evaluating Plaintiff's intellectual impairment as discussed above, the ALJ specifically noted that Plaintiff "stopped working in 2007 due to her mother's illness as opposed to functional limitations caused by her own impairment." (Tr. at 14.) Thus, the ALJ provided a full explanation and discussion, incorporated the limitation as part of the RFC, and ultimately concluded that Plaintiff could return to her past relevant work, which she had been able to do for at least two years until she left to care for her mother. In the circumstances, any error in finding Plaintiff's mental impairment non-severe at step two is harmless given the full explanation and discussion set out by the ALJ.

The Court also notes that, in challenging the ALJ's determination at step two, Plaintiff argues that the state agency psychological consultants identified borderline intellectual functioning as a severe impairment and found that she was limited to simple, routine work as a result. However, Plaintiff herself acknowledges that the RFC formulated by the ALJ includes the mental limitations identified by the state agency consultants. (Pl.'s Br. at 5.) Specifically, on initial review, state agency psychological consultant Thomas Conger, Ph.D., considered Plaintiff's intellectual impairment, including the IQ testing, and found that Plaintiff's "Mild ID does not impose any significant mental limitations," that she has "demonstrated the ability to learn and perform simple tasks," and that "she is judged to be capable of performing routine

9

tasks independently." (Tr. at 61, 60, 64.) Similarly, on Reconsideration, state agency psychological consultant Ken Wilson, Psy. D., found that Plaintiff was "mentally capable of performing routine tasks" on a sustained basis and over time. (Tr. at 92, 88, 89.)[6] The state agency consultants concluded that Plaintiff could return to her past relevant work. (Tr. at 65, 94.) As noted above, the RFC in this case limited Plaintiff to "performing simple, routine, repetitive tasks" and the ALJ concluded that she could return to her past relevant work. (Tr. at 15, 17.) To the extent that Plaintiff now relies on the state agency consultants to challenge the ALJ's determination regarding her intellectual impairment, she fails to suggest any additional limitations that would stem from this impairment, beyond the limitation to simple, routine, repetitive tasks reflected in the RFC. In fact, Plaintiff's repeatedly suggests that the existing mental RFC was appropriate. Plaintiff likewise fails to suggest any basis for concluding that her mental limitations changed and would now preclude her from returning to her past relevant work. Therefore, the Court finds no basis for remand of the ALJ's determination in this regard, and any error in failing to designate Plaintiff's mental impairment as a severe impairment at step two is harmless, given the full explanation and evaluation regarding Plaintiff's mental impairment by the ALJ, as set out at length above.[7]

---

[6] The consultants also explained that Plaintiff's functioning during the developmental period was in the borderline range and that she cannot be diagnosed with intellectual disability as an adult, and the ALJ included this information in his decision. (Tr. at 13, 89.)

[7] Plaintiff cites the Sixth Circuit's decision in Salmi v. Sec. of Health & Human Servs., 774 F.2d 685, 693 (6th Cir. 1985) as evidence that an IQ score of less than 80 is *per se* severe. (Pl.'s Br. at 6.) However, the evidence in Salmi involved much more than just an IQ score, and included multiple unsuccessful job attempts that resulted in termination as a result of an inability to respond appropriately to supervision and co-workers, with "difficulty understanding the basics of employer/employee relationships," an inability to follow even simple instructions, and the need for one-on-one supervision. Salmi, 774 F.2d at 693. That evidence is substantially different from the evidence included in the present case. In addition, to the extent Salmi makes reference to Social Security Ruling 82-55, that SSR 82-55 has since been rescinded without replacement. Moreover, as

B.  Step Three Listed Impairments

In her second, related argument, Plaintiff contends that the ALJ erred by failing to expressly evaluate whether her intellectual deficits met or equaled Listings 12.05B and 12.11.

At step three of the sequential analysis, the ALJ considers whether any impairment meets or equals one or more of the impairments listed in the regulations at 20 CFR Part 404, Subpart P, Appendix 1.  In analyzing the evidence at step three, an ALJ is not required to explicitly identify and discuss every possible listing; however, he must provide sufficient explanation and analysis to allow meaningful judicial review of his step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing.  Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Where such evidence exists but is rejected without discussion, "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings."  Id. (citing Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)).  In reviewing the ALJ's analysis, it is possible that even "[a] cursory explanation" at step three may prove "satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." Meador v. Colvin, No. 7:13-CV-214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir.2011)).  Nevertheless, the ALJ's decision must include "a sufficient discussion of the evidence and explanation of its reasoning such that meaningful judicial review is possible."  Id.  If the decision does not include sufficient

---

discussed above, any error in failing to designate Plaintiff's mental impairment as a severe impairment at step two is harmless in the present case.

11

explanation and analysis to allow meaningful judicial review of the ALJ's listing determination, remand is appropriate. Radford, 734 F.3d at 295.

Here, Plaintiff argues that her full-scale IQ score of 62 and her prior diagnosis of borderline intellectual impairment should have triggered a listing analysis at step three. (Pl.'s Br. at 6-7.) However, Plaintiff's argument ignores the fact that, to meet a listing, a claimant must meet *all* of the specified criteria of that listing, see Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Plaintiff fails to even mention the specified criteria for the listings in question, let alone point to any record evidence that her mental impairment meets those criteria.

Under Listing 12.05(B) in effect at the time of the ALJ's decision, Plaintiff would be required to show the following:

> 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>    b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; **and**
>
> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
>    a. Understand, remember, or apply information (see 12.00E1); or
>    b. Interact with others (see 12.00E2); or
>    c. Concentrate, persist, or maintain pace (see 12.00E3); or
>    d. Adapt or manage oneself (see 12.00E4); **and**
>
> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

See 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 12.05 (emphasis added).[8] Plaintiff's IQ score, if valid, would satisfy Paragraph 1. However, Plaintiff would also have to show significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the broad areas of mental functioning, and evidence that the disorder began prior to age 22. Id. Similarly, to meet Listing 12.11, a claimant must show:

> A. Medical documentation of the requirements of paragraph 1, 2, or 3:
>   1. One or both of the following:
>      a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or
>      b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").
>   2. Significant difficulties learning and using academic skills; or
>   3. Recurrent motor movement or vocalization.
> AND
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>   1. Understand, remember, or apply information (see 12.00E1).
>   2. Interact with others (see 12.00E2).
>   3. Concentrate, persist, or maintain pace (see 12.00E3).
>   4. Adapt or manage oneself (see 12.00E4).

See 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 12.11. Thus, as with Listing 12.05B, Plaintiff would also have to show extreme limitation of one, or marked limitation of two, of the broad areas of mental functioning.

---

[8] Notably, the Listings were amended effective January 17, 2017. See 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 2.05; 81 Fed. Reg. 66161, 66167 (Sept. 26, 2016); see generally 81 Fed. Reg. 66138-01 (Sept. 26, 2016). These amendments were in effect at the time of the ALJ's decision on June 21, 2017. Plaintiff does not contend that the prior version of the Listings would apply, and the Court has reviewed the ALJ's decision based on the amended version of the Listings in effect at the time of the ALJ's decision, set out above. See 81 Fed. Reg. 66138-01 (Sept. 26, 2016) ("[T]hese final rules will be effective on January 17, 2017. . . . This means that we will use these final rules on and after their effective date, in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand.").

As set out above, the ALJ considered and evaluated the effect of Plaintiff's intellectual impairment on the broad areas of mental functioning set out in the "paragraph B" criteria of the listings and determined that Plaintiff had a mild restriction in understanding, remembering, or applying information; mild difficulties in maintaining social functioning, no limitation in interacting with others; no limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing herself. (Tr. at 14.) In contrast, both of the Listings specified by Plaintiff expressly require either (1) an extreme limitation in one of the paragraph B criteria or (2) a marked limitation in two of these areas. By finding that Plaintiff's intellectual impairment caused, at most, mild restrictions in her mental functioning, the ALJ adequately explained, for purposes of judicial review, why Plaintiff's intellectual impairment failed to meet Listings 12.05B, 12.11, or any other mental disorder listing. The decision thus allows for meaningful judicial review as required under Radford. Moreover, Plaintiff does not challenge the ALJ's paragraph B findings or cite any other evidence that her intellectual impairment could potentially meet or equal a Listing. In the circumstances, the Court finds no basis for remand at step three.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #10] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #12] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 12th day of August, 2019.

                                                           /s/ Joi Elizabeth Peake
                                                 United States Magistrate Judge